## MARLIN–ROCKWELL CORPORATION v. NATIONAL LABOR RELATIONS BOARD.

### No. 113.

Circuit Court of Appeals, Second Circuit.

Jan. 28, 1943.

CHASE, Circuit Judge.

The Marlin-Rockwell Corporation is a Delaware corporation having its principal place of business at Jamestown, New York, where it is engaged in the manufacture and sale of ball bearings. Pursuant to section 10(b) of the National Labor Relations Act, 29 U.S.C.A. § 160(b), the National Labor Relations Board issued a complaint against the petitioner based on an amended charge filed by one Herbert S. Anderson who alleged that petitioner had committed unfair labor practices in violation of § 8(1) (3) and (4), 29 U.S.C.A. § 158(1, 3, 4), in failing to rehire twenty-five named employees who had previously been laid off for good and sufficient reasons. The Board, after having found unlawful discrimination against fourteen of the twenty-five employees, ordered the corporation to cease and desist from its unfair practices and to offer the fourteen employees reinstatement with back pay. The petitioner seeks to set aside this order on the grounds that the Board did not have jurisdiction to issue its complaint; that its decision is not supported by substantial evidence; and that it is in any event based in part upon a misconception of the power of the Board.

The petitioner's claim that the Board did not have jurisdiction in the present controversy is based on the fact that Anderson, who filed the amended charge, had before then left the employ of petitioner and had ceased to be an officer in the International Union, United Automobile Workers of America, Local No. 338, which was the authorized bargaining agent of the employees in Marlin-Rockwell Corporation. That he might, however, file a charge on which the Board could issue a complaint under which it would have jurisdiction to act has been recently settled by N. L. R. B. v. Indiana & Michigan Electric Co. et al., 63 S.Ct. 394, 87 L.Ed. ——, decided Jan. 18, 1943.

The petitioner, in contending that the decision of the Board is not supported by substantial evidence, says that it was improper for it to hear evidence of the earlier labor troubles of Marlin-Rockwell Corporation which were either settled by agreement or litigation. This hearing had to do, however, with new controversies in which the actions of the petitioner in dealing with its employees was properly to be judged in the light of its attitude toward the employer-employee relationship in respect to the rights of employees under the

O'Brian, Hellings, Ulsh & Morey, of Buffalo, N. Y., for petitioner.

Robert B. Watts, Gen. Counsel, Ernest A. Gross, Associate Gen. Counsel, Howard Lichtenstein, Asst. Gen. Counsel, Morris P. Glushien, Joseph B. Robison, and Ralph Winkler, Attys., all of Washington, D. C., for National Labor Relations Board.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

Act. What this attitude had been had some tendency to show what it was at the time in question. That this evidence was admissible to aid in deciding whether the petitioner did discriminate unlawfully in doing what it did is now well established. See N. L. R. B. v. Link-Belt Co., 311 U.S. 584, 588, 61 S.Ct. 358, 85 L.Ed. 368, and N. L. R. B. v. National Seal Corp., 2 Cir., 127 F.2d 776, 778.

■ The Board's decision appears to have been supported by substantial evidence which was given due effect except in one instance which will be mentioned later. The petitioner admits that there was evidence from which the Board could have found that four supervisory employees, Brandel, Leonhart, Kreutz and Blodine, each made anti-union statements to employees to deter them from joining, or remaining members of, the union. That admission alone gives adequate support for the cease and desist order insofar as it applies to such practices. The petitioner likewise concedes that there was evidence from which the Board could find discrimination in the failure to rehire Moller, one of the employees in the grinding department. This leaves for consideration only the evidence relating to the remaining thirteen employees whom petitioner failed to rehire and that may here be treated generally.

■ These thirteen employees were originally laid off during a slack period in the operation of petitioner's Jamestown plant. But after that petitioner's operations increased to a point that required its hiring a number of men and women greatly in excess of the number of its employees remaining at the time of the lay-off. It had been determined by the Board in an earlier case in which petitioner was involved that it was the customary practice of Marlin-Rockwell Corporation to recall its former employees when work revived and that determination was noted in Marlin-Rockwell Corporation v. N. L. R. B., 2 Cir., 116 F.2d 586, 588. At the hearing in the instant case the Board found on adequate evidence that there had been no substantial change in that policy. It also found on ample evidence that these thirteen employees applied for work after the lay-off and that their applications were denied because of union sympathies and activities. That was enough basis for the conclusion of discrimination on the part of petitioner dating from the time these men and women would have been rehired but for their union activities. See, N. L. R. B. v. Waterman Steamship Corp., 309 U.S. 206, 223, 60 S.Ct. 493, 84 L.Ed. 704; N. L. R. B. v. Bachelder, 7 Cir., 120 F.2d 574. Some evidence was adduced by petitioner to the effect that the failure to rehire was occasioned by the inefficiency of the thirteen workers; but this claim was met by evidence that these men and women were at least average workers; and the Board had the power and the duty to decide what was the real reason for the failure to rehire. As it had substantial evidence to support the decision it did make we cannot attempt to weigh the evidence for we are bound to give effect to a decision of the Board so supported. Having found the petitioner guilty of unfair labor practices in failing or refusing to rehire these men the Board undertook as a part of its remedial action to order them offered employment with back pay. It was unable to determine accurately in each instance as of what time the employee should have been rehired. Accordingly it adopted a formula under which back pay was to be figured from that time when the employees of each department reached a number substantially above the number which remained at work after the employees to be made whole under the order were laid off. There were the usual provisions for taking into account the earnings of the employees during the time they were unlawfully denied the right to work for the petitioner and the petitioner has taken exception to the refusal to let it cross examine the employees on how much they had so earned.

■ The use of the formula in computing the amount of back pay instead of finding the date on which each employee should have been reinstated and figuring his back pay award accordingly has been questioned by the petitioner. It would, of course, have been more exact to have done as the petitioner suggests and that method is to be recommended where the Board has a fair opportunity to adopt it. But it must be remembered that sometimes the unfair labor practices of the employer makes it impossible within reason to make such precise determinations. That appears to have been so in this instance and when that is the situation the Board may use as close approximations as the circumstances permit in fixing awards of back pay, when it has determined that such awards in connection with offers of reinstatement will

aid in creating the conditions the Act was designed to bring about. Phelps Dodge Corp. v. National Labor Relations Board, 313 U.S. 177, 61 S.Ct. 845, 85 L.Ed. 1271, 133 A.L.R. 1217; F. W. Woolworth Co. v. N. L. R. B., 2 Cir., 121 F.2d 658.

 In the case of one employee, however, the formula has been shown by petitioner to have been applied inaccurately. It appears that this employee, Henry O. Warmack, had been working in the polishing department as a match-polisher and was engaged in that kind of work exclusively, although the department itself was chiefly engaged in outer ring polishing which required more skill than he had when he had previously tried to do that kind of work. At the time Warmack was laid off only two men were left doing match polishing although seven men remained in the whole polishing department. By January 31, 1939, the whole number of men in the department had risen to eighteen. The Board therefore concluded that Warmack ought to have been reinstated as of that date. But it was not until November 10, 1939, that a third man was employed to do match polishing. It would seem that in Warmack's case the back pay ought to be computed by giving effect to that since the two different kinds of operations in the polishing department should be taken into account. Petitioner, however, has failed to demonstrate that the Board's formula was improperly applied with respect to the reinstatement and back pay of the other employees since there was evidence from which it could have found that work was available on the dates used.

The petitioner's grievance that it has been denied the right to cross examine these fourteen employees on their earnings or their opportunities to earn during the period of discrimination can be remedied on further hearing. The trial examiner did in fact permit petitioner to question these employees on whether or not they had worked after they were laid off, but excluded questions as to their precise earnings on the ground that such questions were irrelevant to the issue of discrimination. It was a proper exercise of discretion to decide that first. There were twenty-five cases in which discriminatory refusal to rehire was charged and eleven of these were dismissed. It would have been a waste of time to take that testimony about the precise earnings of those employees. Then, too, there must be a further investigation as to earnings to bring the order up to date in this respect as of the time it becomes final. While that is being done, the petitioner's right to be heard on the subject; to introduce evidence; and to examine and cross examine witnesses will undoubtedly be respected. As it is the Board which should make the necessary determinations by giving effect to all relevant matters, there must be a remand for that purpose. Phelps Dodge Corp. v. N. L. R. B., supra; N. L. R. B. v. Condenser Corporation of America, 3 Cir., 128 F.2d 67, 78; Corning Glass Works v. N. L. R. B., 2 Cir., 129 F.2d 967, 973.

Petition to set aside denied and enforcement granted in accordance with this opinion. Cause remanded to the Board for computation of back pay.