Concepción Rivera, Petitioner, *v.* Puerto Rico Labor
 Relations Board, etc., Respondent; Sindicato de Tra-
 bajadores de la Industria Azucarera de Hatillo,
 Intervener.

No. 17. Argued May 2, 1949.—Decided May 23, 1949.

*E. Martínez Avilés* and *Isaías M. Crespo* for petitioner. *Vicente Géigel Polanco, Attorney General, A. Torres Braschi, Assistant Attorney General* and *Hiram R. Cancio Vilella* (the latter counsel for the Puerto Rico Labor Relations Board), for the Board.

MR. JUSTICE SNYDER delivered the opinion of the Court.

This is a petition by Concepción Rivera, an employer, for review of a Decision and Order of the insular Labor Relations Board.

In 1947 Rivera owned three farms in Hatillo of which 74 acres were devoted to growing sugar cane. He was charged in a complaint issued by the Board with having committed various unfair labor practices in March of 1947. These included discharge of certain employees for union activities and refusal to bargain collectively with the Hatillo branch of the Sindicato de Trabajadores de la Industria Azucarera as the exclusive representative of his employees who worked in the cultivation, harvesting and transportation of cane on his three farms.

The Board found that Rivera's employees in his cane operations on these three farms constituted an appropriate bargaining unit under § 5 (2) of our Labor Relations Act; that the Sindicato had been designated by a majority of these employees for the purpose of collective bargaining under § 5 (1) ; that Rivera had discharged certain of his employees because of their activities in the Sindicato; and that he had refused to bargain collectively with the Sindicato as the exclusive representative of his employees and had thereby committed an unfair labor practice in violation of § 8 (1) (d) of the Act.[1]

---

[1] Section 5 of Act No. 130, Laws of Puerto Rico, 1945, as amended by Act No. 6, Laws of Puerto Rico, 1946, reads in part as follows:

■ The employer's first assignment is that the Board erred in determining that Acisclo González is President of the Hatillo branch of the Sindicato. There is evidence in the record to support the finding of the Board that González was President of the local branch of the Sindicato which made a demand on the employer to bargain collectively. We are not at liberty to interfere with this finding, in view of the provision of § 9(2)(b) of the Act that "the findings of the Board as to the facts, if supported by the evidence, shall . . . be conclusive." *Labor Relations Board* v. *Namerow*, 69 P.R.R. 77.

■ In addition, the employer has no standing to press the contention that González was not the duly elected President of the union. An employer may, of course, require any individual who purports to represent his employees or their union to produce his credentials. But the employer cannot ordinarily look behind these credentials if they are authentic. "An employer has no standing to question the method of selection by a union of its bargaining committee [or as here the President of the union]; that is solely an intraunion matter." *In the Matter of Lane Cotton Mills Company et al.*, 9 N.L.R.B. 952, 968 (1938).

■ Finally, the petitioner has misinterpreted § 8(1) (d), which requires an employer to bargain collectively with "the representatives of a majority of his employees". That provision does not give employers the right to inquire into the internal affairs of the union. It ordinarily refers to a union which represents the employees, and not to the identity

*"Representatives and Elections.* (1) Representatives designated or elected for the purposes of collective bargaining by a majority of the employees in a unit appropriate for such purpose shall ·be the exclusive representative of all the employees in such collective bargaining unit . . .

"(2) In order to insure to the employees the full enjoyment of the rights of self-organization and collective bargaining, and otherwise to carry out the purpose of this Act, the Board shall decide in each case the appropriate unit for the purposes of collective bargaining."

Section 8(1)(d) makes it an unfair labor practice for an employer "To refuse to bargain collectively with the representatives of a majority of his employees in a unit appropriate for collective bargaining, subject to the provisions of Section 5."

of the officers or bargaining committee of the union. We make it clear that in carrying out the obligation imposed on him by § 8(1)(d), an employer who believes in good faith that a particular union is not the authorized representative of his employees may question its authority at the time the demand is made that he bargain with it. But when Rivera refused to bargain in this case, he did not raise that question. On the contrary, he insisted that he would not sign an agreement until other small colonos in the neighborhood had signed. This was, of course, an improper reason for refusal to bargain collectively. *In the Matter of Harbor Boat Bldg. Co. et al.*, 1 N.L.R.B. 349 (1936). He gave other similar unacceptable reasons for his position. Those reasons having been shown to be without legal basis, the employer cannot, after having refused to bargain collectively with a union, contend for the first time in the proceeding before the Board as an afterthought that the particular union was not the authorized representative of his employees. *In the Matter of the Solvay Process Company et al.*, 21 N.L.R.B. 882, 901 (1940); *In the Matter of Lennox Furnace Co. et al.*, 20 N.L.R.B. 962, 980 (1940); *In the Matter of Art Metal Construction Company et al.*, 12 N.L.R.B. 1307, 1313–14 (1939); *In the Matter of Williams Coal Company et al.*, 11 N.L.R.B. 579, 600 (1939).

■ Although they have no relation to the first error, the petition discusses a number of other matters under this assignment. None of them is worthy of comment by us, except for the following points.

Rivera attacks the constitutionality of our Act because it requires performance of certain obligations by employers, and not by employees. The Wagner Act, contrary to our Act, made no provision for unfair labor practices by employees. Nevertheless, the Supreme Court, in an opinion by Chief Justice Hughes sustaining the constitutionality of the Federal Act, used the following language in *N.L.R.B.* v. *Jones & Laughlin*, 301 U. S. 1, 46:

"The Act has been criticized as one-sided in its application; that it subjects the employer to supervision and restraint and leaves untouched the abuses for which employees may be responsible; that it fails to provide a more comprehensive plan, —with better assurances of fairness to both sides and with increased chances of success in bringing about, if not compelling, equitable solutions of industrial disputes affecting interstate commerce. But we are dealing with the power of Congress, not with a particular policy or with the extent to which policy should go. We have frequently said that the legislative authority, exerted within its proper field, need not embrace all the evils within its reach. The Constitution does not forbid 'cautious advance, step by step,' in dealing with the evils which are exhibited in activities within the range of legislative power."

■ Under the first error the petition also complains of an "inquisitorial proceeding" in which the Board is a party and judge. It is true the statute combines in one agency not only the power to investigate, initiate and prosecute, but also the power to hear and decide cases. But it was within the power of the Legislature to so provide. On a contention of this character, we have discharged our function once we find, as we do here, that there is no evidence in the record demonstrating that the Examiner or the Board had prejudged the case or acted in a prejudicial manner. *N.L.R.B.* v. *Botany Worsted Mills*, 133 F. 2d 876, 882 (C.C.A. 3, 1942); *Press Co.* v. *N.L.R.B.*, 118 F. 2d 937, 940 (C.C.A., D.C., 1940).

■■ The second assignment is that the Board erred in determining the appropriate unit of employees. However, in arguing this point, the petitioner does not attack the finding of the Board that the employees on the three farms constitute an appropriate bargaining unit. Rather his point is that the majority of his employees were not members of the union at the time the latter demanded that he bargain with it.

The Board found (1) that a majority of the petitioner's employees—12 out of 22—had designated the union as its representative to bargain collectively. In addition, it found (2) that a majority of the employees had gone out on the

strike called by the union. Here again the error assigned could be disposed of by simply saying that since there was evidence in the record sustaining the first finding that a majority of Rivera's employees belonging to the union, the order of the Board must be affirmed under § 9 (2) (a) of the Act.

However, there is an additional factor which shows that the second error was not committed. The Board did not stop when it made the first finding that a majority of the employees had designated the union as their representative. It also found that a majority had actually supported the strike. The latter finding strengthened the finding of fact on the majority question in view of the rule that if there is doubt (which did not exist here) as to whether the union has a majority, the fact that the majority of the employees as here actually support the strike is evidence tending to show that the union which called the strike represented a majority of the employees. *In the Matter of Denver Automobile Dealers 'Association et al.,* 10 N.L.R.B. 1173, 1189 (1939) ; *In the Matter of Rabhor Co., Inc.,* 1 N.L.R.B. 470, 476 (1936) ; *In the Matter of Remington Rand, Inc.,* 2 N.L.R.B. 626, 643 (1937).

Before leaving this assignment, we think it desirable to point out that the petitioner begins his discussion of this error by stating: "An appropriate unit of employees consists of a majority of the bona fide employees of the employer defendant who as such have voted by a majority in elections duly called and have decided to affiliate with the union."

We cannot agree with this definition of an appropriate bargaining unit. On the contrary, at the time it makes the determination of the appropriate bargaining unit, the Board is not required to consider what union if any has the majority of employees of a particular employer among its members. Rather, once it determines what is the appropriate bargaining unit, thereafter it determines if a particular union has

the majority in the unit which it has previously found appropriate.

 Under § 5(2) of the Act the Board has broad discretion to determine on a flexible and functional basis what constitutes an appropriate bargaining unit. It takes into consideration such matters as (1) encouragement of collective bargaining; (2) the history of collective bargaining in the business of the particular employer and the industry as a whole; (3) integration of processes and management; (4) skills of employees involved; and (5) the desires of the employees. Cox, Cases on Labor Law, pp. 855–62 (1948); 1 C.C.H. Labor Law Reporter, Fourth Edition, par. 2605, pp. 2721 *et seq.* And the determination of the Board of an appropriate bargaining unit is conclusive and will be affirmed when it is before us in an appropriate case unless its decision is arbitrary or capricious. *Packard Co.* v. *N.L.R.B.*, 330 U. S. 485, 491; *N.L.R.B.* v. *Hearst Publications*, 322 U. S. 111, 134; *Pittsburgh Glass Co.* v. *N.L.R.B.*, 313 U. S. 146, 155–57; *N.L.R.B.* v. *Botany Worsted Mills*, *supra*, p. 880; *N.L.R.B.* v. *Clarksburg Pub. Co.*, 120 F. 2d 976, 980 (C.C.A. 4, 1941); *N.L.R.B.* v. *Lund*, 103 F. 2d 815, 819 (C.C.A. 8, 1939).

 The third assignment is that the Board erred in holding that the petitioner is obligated to pay "indemnity" to certain employees. While the statement of this error is difficult to understand, in the course of the argument the petitioner complains that the Board did not determine the exact amount of money payable to each workman and also suggests that in computing this amount sums earned by the employees while working elsewhere should be deducted.

Since the Wagner Act was passed in 1935, the National Board has been providing for compensation of employees for loss of pay because of unfair labor practices by orders couched in general terms. Determination of exact amounts has been left to the administrative machinery of the Board, with the cooperation of the employer, whose payrolls serve

as a basis for the final computation. The order herein follows this practice, which has been approved by the courts. *Phelps Dodge Corp.* v. *N.L.R.B.*, 313 U. S. 177; *Wallace Corporation* v. *N.L.R.B.*, 159 F. 2d 952 (C.C.A. 4, 1947); *N.L.R.B.* v. *New York Merchandise Co.*, 134 F. 2d 949 (C.C.A. 2, 1943); *Marlin–Rockwell Corp.* v. *N.L.R.B.*, 133 F. 2d 258 (C.C.A. 2, 1943). And see *Mine Workers* v. *Eagle Picher Co.*, 325 U. S. 335.

■■■ Our Act is remedial, not punitive. The petitioner is therefore entitled, as he argues, to deduct from the amounts due his employees any sums they earned from other employers for whom they worked during the period they were not employed by the petitioner because of the latter's unfair labor practices. But we are at a loss to understand why the petitioner discusses this matter, as the order of the Board contains a specific provision to this effect.

■■■ The fourth error is that the Board demonstrated partiality and prejudice against the petitioner. We find no evidence of such conduct in the record. If anything, the record shows tolerance on the part of the Examiner and the Board for the petitioner and his attorney, who demonstrated both before the Board and this Court a lack of comprehension of the terms of the Act and the rights of employees thereunder. In addition, the Board made certain modifications in the findings of the Examiner in favor of the employer which the latter apparently did not request. Such conduct scarcely warrants the serious but unsupported charge of partiality and prejudice.

Here again the petitioner follows his practice of discussing matters which have no relation to the error assigned. Under the fourth error he urges that the Board had no power to provide in its Decision and Order that he shall post a "Notice to My Employees".

This Court is constantly engaged in an uphill struggle to keep abreast of a heavy docket of cases in widely different fields of law. We could conserve our time and energy for

14

disposition of substantial questions if litigants would read the statute in question before advancing such a frivolous contention. Section 9(1)(b) specifically confers on the Board the power to require the posting of such a notice.[2] Moreover, even without such a provision in the Wagner Act, orders of the National Board requiring such notices have been upheld. *N.L.R.B.* v. *Greyhound Lines*, 303 U. S. 261; *N.L.R.B.* v. *Mackay Co.*, 304 U. S. 333; *N.L.R.B.* v. *Sunbeam Electric Mfg. Co.*, 133 F. 2d 856, 861 (C.C.A. 7, 1943).

 Under the fourth error the petitioner also argues that "the Board lacks jurisdiction to compel an employer to pay wages or indemnity to complainant employees, expenses that may only be claimed in a court of justice where the employer has more liberty of action to resist the claim in an impartial and litigious trial." Once more counsel for the employer has failed to read the Act. Section 9(1)(b) expressly vests this power in the Board. And orders to that effect have been uniformly sustained under the Wagner Act since such an order was first upheld in *N.L.R.B.* v. *Jones & Laughlin, supra*, p. 48.

 The fifth assignment is that the Board erred in denying the motion of the employer to dismiss the proceedings on the ground that he had sold the three farms involved therein. The order of the Board states that the fact that

---

[2] Section 9(1)(b) provides in part: "If according to all the testimony taken, the Board is of the opinion that any person, employer or labor organization named in the complaint has engaged in or is engaging in an unfair labor practice, then the Board shall make its findings of fact and of law and issue its order, and shall cause the same to be served upon such person, employer or labor organization, requiring it to cease and desist from said unfair labor practice and to take such affirmative action as shall effectuate the purpose of this Act, including, but not limited to, reinstatement of employees with or without back pay, *the posting or transmittal by mail of appropriate notices*, and the termination of collective bargaining contracts in whole or in part; or make any other order against such person, employer, party, or labor organization, that shall effectuate the purposes of this Act. The order may likewise require such person, employer or labor organization to submit a report from time to time showing the extent to which he has complied with the same." (Italics ours).

these farms were sold by the petitioner came to its attention after the Examiner had submitted his report and recommendations. It therefore modified the order suggested by the Examiner to provide for compensation to the employees involved only until the date the employer sold the farms. The Board also provided that if Rivera reacquired these farms, he must on demand bargain collectively with the union as the exclusive representative of his employees thereon. And it changed the provision for posting a notice to a provision for mailing it to the workmen involved.

An unfair labor practice proceeding does not become wholly academic by virtue of a sale of his business by the employer. The Board may still enter orders directed to the former employer which are not incompatible with the sale of the business. To hold the contrary would enable an employer merely by transferring his business to evade the obligations which he had previously incurred by virtue of his unlawful conduct while operating the business. Orders like the instant order have been issued and upheld in a host of cases. *Southport Co.* v. *N.L.R.B.*, 315 U. S. 100; *N.L.R.B.* v. *Cleveland–Cliffs Iron Co.*, 133 F. 2d 295 (C.C.A. 6, 1943); *N.L.R.B.* v. *Killoren*, 122 F. 2d 609 (C.C.A. 8, 1941); *Indianapolis Power & Light Co.* v. *N.L.R.B.*, 122 F. 2d 757 (C.C.A. 7, 1941); *In the Matter of Ray Nichols, Inc. et al.*, 15 N.L.R.B. 846 (1939); *In the Matter of Schieber et al.*, 26 N.L.R.B. 937 (1940).

We reject the final agreement of the petitioner under the fifth error that the Board could order him to bargain collectively only for the crop season of the year in which he committed the unfair labor practice of refusing to bargain. As this case illustrates, dilatory tactics by an employer may delay final disposition of such a case for an entire grinding season or more. To agree with the petitioner would therefore mean in practical effect that the Legislative Assem-

bly did not intend for the Act to apply to employees engaged in the cultivation and harvesting of sugar cane. We are unable to attribute that intention to the Legislature.

The petition of the employer for review of the Decision and Order of the Board will be dismissed, and a judgment will be entered enforcing it.